599 So.2d 641 (1992)
Marjorie and Robert SCHICK, et al., Petitioners,
v.
DEPARTMENT OF AGRICULTURE AND CONSUMER SERVICES, Respondent.
No. 77906.
Supreme Court of Florida.
March 26, 1992.
Rehearing Denied June 30, 1992.
Randall E. Denker of Lehrman and Denker, Tallahassee, for petitioners.
Clinton H. Coulter, Jr., Tallahassee, for respondent.
PER CURIAM.
We have for review Department of Agriculture & Consumer Services v. Schick, 580 So.2d 648 (Fla. 1st DCA 1991), (Schick IV), in which the district court certified the following question of great public importance:
IN DETERMINING THE REASONABLENESS OF AN ATTORNEY'S FEE AWARD MADE PURSUANT TO THE PROVISIONS OF SECTION 73.092, FLORIDA STATUTES, IS THE ROWE[[1]] CONTINGENCY RISK MULTIPLIER APPLICABLE IN AN INVERSE CONDEMNATION ACTION, BASED UPON A RECORD IN WHICH IT IS CLEARLY APPARENT THAT IT WAS INITIALLY HIGHLY UNCERTAIN WHETHER THE CLAIMANTS WOULD PREVAIL ON THE THRESHOLD ISSUE OF A TAKING?
Id. 580 So.2d at 651. We have jurisdiction, Art. V, § 3(b)(4), Fla. Const. We answer the certified question in the negative and approve the decision below.
The Department of Agriculture (the Department) was ordered to pay attorney's fees to the petitioners, Robert and Marjorie Schick, Buck Hull, and Dot Hull Shaw (the *642 Schicks) in an inverse condemnation action. The Schicks had filed suit to recover damages that arose from the contamination of their well water with ethylene dibromide (EDB). The contamination resulted from the Department's program of spraying EDB on orange groves near the Schicks' property. Because the contamination rendered their well water useless, one of the Schicks' legal theories and the claim on which they ultimately prevailed[2] was inverse condemnation.
In their complaint, the Schicks requested that costs, including reasonable attorney's fees, be assessed against the Department pursuant to section 73.091, Florida Statutes (1987).[3] The trial court awarded attorney's fees of 800 hours at $150 per hour at the trial level, and 21 hours at the same rate for the appellate fee. The trial court then enhanced the attorney's fee awards by applying a Rowe "contingency risk" multiplier of 2.5 to the trial fee, and 2.0 to the appellate fee. However, the court failed to set forth specific findings to support application of the fee multipliers.
On appeal the district court reversed the award, holding that the trial court erred in awarding attorney's fees that included a Rowe contingency risk multiplier without making specific findings to support application of the multiplier. Department of Agric. & Consumer Servs. v. Schick, 553 So.2d 361, 362 (Fla. 1st DCA 1989) (Schick III). However, although the district court recognized that "[f]requently a fee awardable pursuant to section 73.091 would not appropriately include a contingency risk factor," it rejected the contention that the trial court erred in applying a risk multiplier to the fees awarded in this case. Id. It concluded that under circumstances such as this, where entitlement to a fee under section 73.091 does not vest until the land-owner overcomes the hurdle of showing inverse condemnation, application of a contingency risk factor can be upheld if adequate reasons for the award are set forth by the trial court. Id.
On remand, the trial court reinstated its earlier fee award, this time including a detailed order supporting application of the contingency risk multipliers. The Department appealed, again complaining of the use of Rowe risk multipliers. In the decision under review, Schick IV, the district court reexamined the issue,[4] in light of the release of our intervening decision in Standard Guaranty Insurance Co. v. Quanstrom, 555 So.2d 828 (Fla. 1990).
Recognizing that its holding in Schick III appeared to be in conflict with Quanstrom, the district court reversed the award of multiplier-enhanced attorney's fees, and remanded with directions to determine the attorney's fee award based solely on the factors set forth under section 73.092.[5]Schick IV, 580 So.2d at 651. The *643 district court reasoned that based on this Court's decision in Quanstrom:
if a statute exists, as here, in which the legislature has set forth specific criteria that must be considered by a tribunal when deciding a reasonable award of an attorney's fee, that specific statute controls  not Rowe  and if the statute does not contemplate the use of additional factors, such as multipliers, then those factors cannot be considered in determining the award.
Id. at 650. We agree that where the legislature has set forth specific criteria for determining reasonable attorney's fees to be awarded pursuant to a fee-authorizing statute, the trial judge is bound to use only the enumerated criteria.
In Quanstrom, we examined the use of contingency fee multipliers under the following three basic categories of attorney's fees cases: 1) public policy enforcement cases; 2) tort and contract claims; and 3) family law, eminent domain, and estate and trust matters. Quanstrom, 555 So.2d at 833. In discussing the second category, tort and contract claims, we noted that where the legislature has been very specific in setting the criteria that can be considered in determining a reasonable attorney's fee, utilization of the lodestar method, with its contingency risk factors, is "unnecessary." Id. at 834-35. While discussing the third category, which includes eminent domain actions where the attorney is assured of a fee under section 73.091, we noted:
Under ordinary circumstances, a contingency fee multiplier is not justified in this category, although the basic lodestar method of computing a reasonable attorney's fee may be an appropriate starting point.
Id. at 835. See also In re Estate of Platt, 586 So.2d 328, 335 (Fla. 1991) (although contingency fee multiplier ordinarily is not appropriate in category three cases, determining a reasonable hourly rate for a particular type of legal service and the number of hours that reasonably should be expended in providing those services is an appropriate starting point for computing a reasonable fee in eminent domain and most other proceedings).
The district court properly construed our decision in Quanstrom as effectively overruling Schick III. This is because the legislature has specifically included in section 73.092 the criteria to be considered in awarding attorney's fees pursuant to section 73.091, and neither the contingent nature of the fee arrangement nor the risk of nonpayment of fees is an authorized consideration. We therefore answer the certified question in the negative and hold that in determining the reasonableness of an attorney's fee award, made pursuant to section 73.091 in an inverse condemnation action, a Rowe contingency risk multiplier should not be utilized.
Where the legislature is silent on the factors it considers important in determining a reasonable fee, courts may look to the criteria enumerated in rule 4-1.5 of the Rules Regulating The Florida Bar,[6] and may apply Rowe risk multipliers where appropriate. See Quanstrom. However, *644 where, as here, the legislature specifically sets forth the criteria it deems will result in a reasonable award and will further the purpose of the fee-authorizing statute, only the enumerated factors may be considered.
In its order awarding attorney's fees, the trial court set forth extensive findings in support of enhancement with risk multipliers. Although the trial court did refer to the risk of nonpayment of fees, it also made a number of findings that relate to factors enumerated in section 73.092.[7] It is unclear what effect the statutorily authorized considerations would have had on the initial fee determination had the court been aware that enhancement with risk multipliers was inappropriate. Therefore, we remand for reassessment of a reasonable fee. In accordance with this opinion, the court shall limit its consideration to those factors enumerated in the statute. However, as we noted in Quanstrom, "the principles to be utilized in computing [the] fees must be flexible to enable the [court] to consider rare and extraordinary cases with truly special circumstances." Quanstrom, 555 So.2d at 835.
Accordingly, we answer the certified question in the negative, approve the decision below, and remand for further proceedings consistent with this opinion.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, GRIMES and HARDING, JJ., concur.
KOGAN, J., dissents with an opinion, in which BARKETT, J., concurs.
KOGAN, Justice, dissenting.
I respectively dissent because I believe the majority opinion further compounds the confusion surrounding how to determine reasonable attorney's fees awarded pursuant to a fee-authorizing statute.
I agree with Judge Wolf, dissenting below, that the statement that "`[u]nder ordinary circumstances, a contingency fee multiplier is not justified' in eminent domain cases,[8] is not applicable to inverse condemnation proceedings." See Department of Agric. & Consumer Servs. v. Schick, 580 So.2d 648, 652 (Fla. 1st DCA 1991) (Wolf, J., dissenting). In category three cases, which include family law, eminent domain, and estate and trust proceedings, a contingency risk multiplier is not justified because the attorney is generally assured of a fee when the action commences. Quanstrom, 555 So.2d at 835.
Inverse condemnation actions clearly do not belong in this category because entitlement to a fee is not assured until the property owner prevails on the threshold issue of a taking. Because the contingency risk factor was created to compensate attorneys for those cases where, as here, there is a risk of nonpayment, In re Estate of Platt, 586 So.2d 328, 334 (Fla. 1991), I would hold that the statement in Quanstrom has no application in this case. This conclusion is supported by our recognition that the three categories identified in Quanstrom were "not intended to be all-inclusive." Quanstrom, 555 So.2d at 833.
*645 I also agree with Judge Wolf that if an inverse condemnation action is considered a category three proceeding, the findings in the instant case justify application of the risk multipliers. See Schick IV, 580 So.2d at 652 (Wolf, J., dissenting). Although section 73.091 has been construed as providing for attorney's fees in successful inverse condemnation actions, the statutory criteria for determining a reasonable fee do not adequately provide guidance in a case such as this. Indeed, this case presents exactly the "special circumstances" we referred to in Quanstrom when we "emphasize[d] that the principles to be utilized in computing [attorney's] fees must be flexible to enable the courts to consider rare and extraordinary cases with truly special circumstances." Quanstrom, 555 So.2d at 835; see also State Farm Fire & Cas. Co. v. Palma, 555 So.2d 836, 838 (Fla. 1990) (risk of nonpayment in conjunction with extraordinary circumstances may justify the use of a multiplier).
The polestar for determining the criteria and principles to be utilized in arriving at a reasonable attorney's fee must be the underlying purpose of the fee-authorizing statute or rule. Quanstrom, 555 So.2d at 835. The purpose of section 73.091 is to "assure that the property owner is made whole when the condemning authority takes the owner's property." Id. at 835. As noted by the district court below:
Obviously, a property owner will not be made whole if the cost of litigating the threshold issue of a taking is excluded from consideration in assessing a reasonable fee following a successful determination that a taking had occurred in an inverse condemnation claim.
Schick IV, 580 So.2d at 651. To assure that the property owner is made whole, the principles employed in making a fee award under section 73.091 must be flexible enough to allow for application of a contingency risk factor where special circumstances warrant such application. In my opinion, the trial court's extensive findings detailing the special circumstances of this case clearly support application of risk multipliers.
Accordingly, I would answer the certified question in the affirmative and quash the decision below.
BARKETT, J., concurs.
NOTES
[1] Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985), modified, Standard Guar. Ins. Co. v. Quanstrom, 555 So.2d 828 (Fla. 1990).
[2] Schick's initial complaint was dismissed for failure to state a cause of action. However, the district court reversed on appeal, holding that the complaint alleged substantial interference with the beneficial use and enjoyment of the property and was sufficient to state a cause of action for inverse condemnation. Schick v. Florida Dept. of Agric. & Consumer Servs., 504 So.2d 1318, 1320 (Fla. 1st DCA), review denied, 513 So.2d 1060 (Fla. 1987).
[3] The Department concedes that attorney's fees in a successful inverse condemnation action are awardable under section 73.091, Florida Statutes (1987). This statute provides for costs, including a reasonable attorney's fee, to land-owners defending eminent domain actions brought by a government agency. See, e.g., Division of Admin. v. Ideal Holding Co., 480 So.2d 243, 245 (Fla. 4th DCA 1985), review denied, 491 So.2d 278 (Fla. 1986); State Road Dept. v. Lewis, 190 So.2d 598 (Fla. 1st DCA), cert. dismissed, 192 So.2d 499 (Fla. 1966).
[4] In Schick IV, the district court recognized that it was reexamining a previously decided point of law but noted that the exceptional circumstances present in this case would result in manifest injustice if the rule of "law of the case" were followed. Department of Agric. & Consumer Servs. v. Schick, 580 So.2d 648, 650 (Fla. 1st DCA 1991). See Strazzulla v. Hendrick, 177 So.2d 1, 4 (Fla. 1965) (except in unusual circumstances where manifest injustice would result, an appellate court should not reconsider a point of law previously decided on a former appeal).
[5] Section 73.092, Florida Statutes (1987), reads in pertinent part:

Attorney's fees.  In assessing attorney's fees in eminent domain proceedings, the court shall consider:
(1) Benefits resulting to the client from the services rendered. However, under no circumstances shall the attorney's fees be based solely on a percentage of the award.
(2) The novelty, difficulty, and importance of the questions involved.
(3) The skill employed by the attorney in conducting the cause.
(4) The amount of money involved.
(5) The responsibility incurred and fulfilled by the attorney.
(6) The attorney's time and labor reasonably required adequately to represent the client.
[6] Rule 4-1.5, Rules Regulating The Florida Bar, provides:

B) Factors to be considered as guides in determining a reasonable fee include the following:
(1) The time and labor required, the novelty, complexity, and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) The likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) The fee, or rate of fee, customarily charged in the locality for legal services of a comparable or similar nature;
(4) The significance of, or amount involved in, the subject matter of the representation, the responsibility involved in the representation, and the results obtained;
(5) The time limitations imposed by the client or by the circumstances and, as between attorney and client, any additional or special time demands or requests of the attorney by the client;
(6) The nature and length of the professional relationship with the client;
(7) The experience, reputation, diligence, and ability of the lawyer or lawyers performing the service and the skill, expertise, or efficiency of effort reflected in the actual providing of such services; and
(8) Whether the fee is fixed or contingent, and, if fixed as to amount or rate, then whether the client's ability to pay rested to any significant degree on the outcome of the representation.
[7] Findings that relate to the statutorily authorized considerations include:

1) The case raised several novel and very unique issues;
2) It was a case of first impression;
3) It was legally and procedurally complicated;
4) The amount of damages involved;
5) The attorney often spent whole days only working on this case;
6) She was forced to turn down paying cases;
7) She worked on this case by herself and with no assistance from co-counsel;
8) She achieved an excellent result;
9) She was diligent and skilled in the handling of this matter; and
10) She has a high level of specialization in environmental law.
[8] Standard Guar. Ins. Co. v. Quanstrom, 555 So.2d 828, 835 (Fla. 1990).